IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD HOWARD,                    )
        Petitioner,             )   Civil Action No. 16-78 Erie
                                  )
        v.                       )
                                  )   Magistrate Judge Susan Paradise Baxter
THERESA DELBALSO, et al.,         )
        Respondents.             )

# **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Donald Howard (the "Petitioner"). For the reasons set forth below, the petition is denied and a certificate of appealability is denied on all claims.

## I.

### **A.** **Relevant Background**[2]

On February 24, 2011, a jury empaneled by the Court of Common Pleas of Erie County convicted the Petitioner of second-degree murder, robbery, theft by unlawful taking, and burglary.[3] Garrett A. Taylor, Esquire, was the Petitioner's trial attorney. The victim in his case was 79-year-old Raymond Goodwill, who died from single wound he sustained from blunt force trauma to his head. His

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] The Respondents submitted in hard-copy format documents filed with the Common Pleas Court and the relevant transcripts. The documents are indexed 1 through 104, and shall be cited herein as "CP No. __ ". In addition, the parties electronically filed some relevant state court records as attachments to their pleadings.

[3] This was the Petitioner's second trial. His first trial ended in a mistrial because the jury could not reach a verdict.

1

girlfriend, Ellen Martin, discovered his body on July 4, 2009, when she went to his home to check on him on after he failed to return her phone calls. Martin found Goodwill's body on his couch. His arms and legs were bound by a yellow nylon cord. The coroner estimated that Goodwill died between 10 p.m. on July 3, 2009, and 10 a.m. on July 4, 2009.

Investigators obtained Goodwill's wallet on a dresser in his home. Goodwill always carried a fake million dollar bill in it, and that item was missing. The Petitioner did odd jobs for Goodwill. When the police interviewed him, he gave contradictory statements about his whereabouts and the money he spent during the relevant time period and he soon became a suspect. The Commonwealth's theory at the Petitioner's trial was that the Petitioner robbed and murdered Goodwill because he was on a crack-cocaine binge and he was desperate for money so that he could buy more drugs. It introduced evidence to support its theory of the case, including evidence to show that the Petitioner's DNA was found on Goodwill's wallet and that in the early morning hours of July 4, 2009, he attempted to buy drugs with the fake million dollar bill.

On April 13, 2011, the court sentenced the Petitioner to a term of life imprisonment on his second-degree murder conviction and a concurrent 2-10 years of imprisonment on his burglary conviction. In his direct appeal to the Superior Court of Pennsylvania, the Petitioner raised numerous claims of trial court error.[4] Commonwealth v. Howard, No. 1230 WDA 2011, 2013 WL 11273239, *1-2 (Pa.Super.Ct. Mar. 4, 2013) ("Howard I"). The only relevant claim that he raised in his direct appeal was that the "the trial court improperly permitted Trooper Keller to present hearsay testimony regarding the

---

[4] Sally Frick, Esquire, represented the Petitioner in his direct appeal.

fake million dollar bill and the source of the information." Id. at *6. The Superior Court denied this claim on the merits, explaining:

> [The Petitioner] next claims that the trial court improperly permitted Trooper Keller to present hearsay testimony regarding the fake million dollar bill and the source of his information. Brief for [the Petitioner] at 24. According to [the Petitioner], the Commonwealth sought to elicit testimony that Trooper Keller was told about the million dollar bill by Mary Hoffman. Id. [The Petitioner] argues that the testimony was offered to show that more people were aware that Goodwill carried a fake million dollar bill. Id. at 25.
>
> At trial, the prosecutor questioned Trooper Keller as follows:
>
>> Q. [The prosecutor]: Trooper, about this million dollar bill, how did you find out about a million dollar bill? Do you recall?
>>
>> A. [Trooper Keller]: It was on Sunday, the 5th, a Mary Hoffman, friend of the deceased, stopped at the scene.
>
> N.T., 2/22/11, at 81. Upon the objection of [defense counsel], the trial court instructed the prosecutor as follows:
>
>> THE COURT: I think you can ask [Trooper Keller] when is the first time you heard about this and from whom. I think what they say, if I understand [defense counsel's] objection, is hearsay, but you can certainly ask when did you hear about the bill and from whom. I think that's it.
>
> Id. at 82. Defense counsel offered no further objection. Thus, our review discloses that the trial court sustained defense counsel's objection, prior to the introduction of any hearsay statement by the witness. As such, we cannot grant [the Petitioner's] relief on this claim.

Id. at *6 (some bracketed text added).[5] The Superior Court also denied the Petitioner's other claims and affirmed his judgment of sentence. Id. at *1-8.

---

[5] Ellen Martin subsequently testified that she obtained the fake million dollar bill at the Crawford County Fair and gave it to Goodwill. She stated that he always kept it in his wallet, which she also had bought for him and which had a John Deere tractor stitched on the front. That wallet was introduced at the Petitioner's trial and Martin identified it as Goodwill's wallet. Trial Tr., 2/22/11, at 217-22. Alex Glessner, a Forensic Scientist for the Pennsylvania State Police, testified that in his

*Footnote continued on next page*

3

On or around February 27, 2014, the Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP. No. 63). He was entitled to the appointment of counsel under state law, but he expressly advised the court in his PCRA motion that "I do not want a lawyer to represent me." (Id. at 7).

In his PCRA motion, the Petitioner contended that Attorney Taylor provided him with ineffective assistance of counsel for failing "to present evidence of exculpatory nature that would show that the wallet [that] was presented at trial, was in fact the wrong wallet" and "failing to call [the Petitioner's sister] as a defense witness." (Id. at 3). He also alleged once again that the trial court erred in permitting Trooper Keller to testify that Mary Hoffman told him that about the fake million dollar bill. This time, the Petitioner contended that Trooper Keller's testimony violated his right to confront Mary Hoffman. (Id. at 3). Because his case was now on collateral review and the Superior Court had already found on direct appeal that there was no error with respect to the way in which the trial court handled the defense's hearsay objection to the challenged testimony, the Petitioner would have to show that Attorney Taylor was ineffective for failing to raise an objection under the Confrontation Clause.

Ineffective assistance of counsel claims are governed by the familiar standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).[6] To prevail on a claim of ineffective

---

expert opinion the DNA profile obtained from the wallet was "two hundred and seventy million more times likely to have originated from" Goodwill and the Petitioner than from Goodwill "and another unrelated individual in the Caucasian population. And 34 billion times more likely than another individual in the unrelated African American population. And one point two billion more times than an individual in the Hispanic population." Trial Tr., 2/24/11, at 20-21.

[6] Pennsylvania courts apply the Strickland standard. See, e.g., Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

assistance under Strickland, the Petitioner has the burden of establishing that his trial "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Importantly, the Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). See also Harrington v. Richter, 562 U.S. 86, 104 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689).

The Supreme Court also instructed:

> "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, —, 130 S. Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

Richter, 562 U.S. at 105.

Strickland also requires that the Petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have

5

been different." Strickland, 466 U.S. at 694. As the United States Court of Appeals for the Third Circuit explained:

> [The Petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [Richter], 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011).

On May 27, 2014, after the Commonwealth had filed its answer to the PCRA motion (ECF No. 65), the Petitioner filed a motion to amend. The PCRA court granted that motion on June 5, 2014. (ECF No. 70).

On July 19, 2014, the PCRA court scheduled an evidentiary hearing on the Petitioner's claims for July 29, 2014. (ECF No. 72). The hearing was held as scheduled. At the beginning, the PCRA court judge conducted a colloquy to ensure that the Petitioner wanted to represent himself. The Petitioner stated that he did. PCRA Hr'g Tr. at 2. The judge advised him of the challenges that representing himself would pose and the attendant risks, and the Petitioner replied that he understood and assured the judge that he did not want the assistance of counsel. Id. at 2-3.

The Petitioner then handed the judge his amended PCRA motion. Id. at 4. The judge stated that he would review it during the hearing. In this amended motion, the Petitioner claimed that he was entitled to PCRA relief because Attorney Taylor provided him with ineffective assistance for failing to contend that: (1) his right to a speedy trial under Rule 600 of the Pennsylvania Rules of Criminal Procedure was violated; (2) his was sentence illegal; (3) the trial court erred in "rush[ing] the jury out

6

because a storm was coming in the area"; and, (4) his right to confront "the principal examiner of the DNA report" was violated. (ECF No. 24-2 at 6-7).

The PCRA court judge next instructed the Petitioner to testify and set forth "exactly what you think Attorney Taylor didn't do that he should have done." PCRA Hr'g Tr. at 5. The judge advised the Petitioner that he "need[ed] to be specific." Id. The Petitioner then testified that he believed Attorney Taylor provided him with ineffective assistance because he did not enter into evidence a wallet that his sister purchased and gave to him (Taylor) mid-trial. Id. at 5-8. After the Petitioner testified about that matter, the PCRA court judge asked him to discuss any other trial testimony to which Attorney Taylor should have objected. Id. at 8. The judge explained to the Petitioner that he had had sufficient time to formulate his claims and that it was now time to discuss them and question Attorney Taylor in order to produce evidence to support them. Id. at 9. The Petitioner did not respond to the judge, and the judge advised him that if he thought of anything later in the hearing, he would let the Petitioner "reopen the record here." Id.

The Commonwealth then called Attorney Taylor to testify, and he responded to the allegations that the Petitioner made when he testified. Id. at 9-19. Near the conclusion of the hearing, the judge asked the Petitioner if there was anything else that he "want[ed] to ask of Attorney Taylor?" Id. at 18. The Petitioner replied: "Not on the wallet." Id. The judge asked the Petitioner: "Any other area? Go ahead." Id. After a brief discussion about the fake million dollar bill, the judge asked the Petitioner: "Anything else about what you've raised in this petition?" Id. The Petitioner replied: "Not that I can think of." Id. The judge then stated: "All right. So we'll close the record, and we're in recess. I'll let you know. I'll issue a decision at some point. Thank you, everybody." Id. at 19.

7

On September 2, 2014, the Petitioner filed another motion to amend his PCRA motion, which the PCRA court denied. (CP Nos. 77-78). On September 12, 2014, the PCRA court issued an opinion and order denying the Petitioner relief. (ECF No. 9-2 at 1-5). It held:

> At the evidentiary hearing, Petitioner limited his PCRA claims to the victim's wallet. Petitioner testified that the wallet introduced at trial was not the same wallet that the victim had when he was murdered. According to Petitioner, his sister, Jean Firewick, purchased a "specimen wallet" (purportedly similar to the victim's actual wallet) and gave it to trial counsel. Petitioner claims that the specimen wallet should have been introduced at trial by way of Firewick's testimony, but trial counsel failed to call her as a witness. Petitioner further alleges that evidence concerning the wallet could have been introduced during Ellen Martin's trial testimony.[3]
>
> > [3] According to Petitioner, the wallet at trial was a black tri-fold wallet which the victim was not carrying when he was murdered. The specimen wallet was a brown bi-fold that would have fit in the victim's vest pocket, unlike the one introduced at trial. At trial, Martin identified the black wallet (which contained Petitioner's DNA) as the victim's wallet.
>
> Trial counsel, Garrett Taylor, Esquire, testified that during and after the first trial, Petitioner never mentioned that the wrong wallet was admitted into evidence. In fact, it was not until the middle of the second trial (and after Ellen Martin's testimony) that Petitioner claimed it was the wrong wallet. Petitioner was unable to provide counsel with a valid reason for waiting until the middle of the second trial to raise his claim. Therefore, based on the time of the disclosure and the manner it was presented, Attorney Taylor did [not] seek to introduce the specimen wallet during the second trial.
>
> Upon review, this Court concludes that the specimen wallet was not admissible during the second trial and, therefore, Petitioner's claim is meritless. Furthermore, this Court finds that Attorney Taylor, who this Court finds credible, reasonably believed that the specimen wallet offered no evidentiary value to Petitioner's defense due to the late disclosure and the fact that it had no positive impact on his defense. Accordingly, Attorney Taylor had a reasonable basis for not calling Petitioner's sister as a witness or attempting to introduce the specimen wallet through other means.

(Id. at 4-5) (additional footnote omitted). Regarding the Petitioner's remaining claims, the PCRA court held that he failed to develop evidence to support them when he had the opportunity to do so at the PCRA hearing and that, as a result, he waived them. (Id. at 5).[7]

The Petitioner subsequently filed a *pro se* appeal with the Superior Court. He requested the assistance of counsel for the appeal and the PCRA court appointed William J. Hathaway, Esquire, to represent him.

On January 5, 2016, the Superior Court issued an opinion and order in which it affirmed the PCRA court's decision. Commonwealth v. Howard, No. 1696 WDA 2014, 2016 WL 71274 (Pa.Super.Ct. Jan. 5, 2016) ("Howard II"). In its opinion, the Superior Court first outlined the Petitioner's claims and the relevant background:

> On appeal, [the Petitioner] presents the following issues for our review:
>
> A. Whether the PCRA [c]ourt erred in failing to find that [the Petitioner] was afforded ineffective assistance of counsel in that trial counsel failed to present exculpatory evidence that the wrong wallet was introduced at trial and that Ellen Martin offered perjured testimony with defense counsel then inadequately conducting cross-examination to demonstrate her patent perjury?
>
> B. Whether the PCRA [c]ourt erred in failing to find that [the Petitioner] was afforded ineffective assistance of counsel in that defense counsel failed to call Jean Firewick as a defense witness for the purpose of documenting, presenting and displaying a factual foundation to introduce the specimen wallet?
>
> C. Whether the PCRA [c]ourt erred in failing to find that [the Petitioner] was deprived of a fair trial given he was not allowed to confront Mary

---

[7] The PCRA court did observe that the "Petitioner's challenge to the legality of his sentence of life imprisonment for second degree murder is meritless. Despite Petitioner's argument to the contrary, the Court was not required to state a minimum sentence less than life imprisonment." (ECF No. 9-2 at 5 n.5) (citing Commonwealth v. Chambers, 852 A.2d 1197 (Pa.Super.Ct. 2004) and Commonwealth v. Lewis, 718 A.2d 1262 (Pa.Super.Ct. 1998)).

> Hoffman whose out of court evidence and statements were permitted to come into evidence by and through the testimony of Trooper Keller?
>
> D. Whether the PCRA [c]ourt erred in failing to find that [Petitioner's] right to a speedy trial was violated and that counsel was ineffective in failing to present and preserve that claim?
>
> E. Whether the PCRA [c]ourt erred in failing to find the imposition of an illegal sentence as per 18 Pa.C.S.A. [§ ] 1102?
>
> F. Whether the PCRA [c]ourt erred in failing to find that [the Petitioner] was deprived of a fair trial given that the lower [c]ourt rushed the deliberations of the jury because of an impending storm and in furtherance of expediting the jury improperly placed limitations on the duration of closing arguments?
>
> G. Whether the PCRA [c]ourt erred in failing to find that [the Petitioner's] right of confrontation of the DNA report was abrogated?
>
> H. Whether the PCRA [c]ourt committed legal error and abused its discretion in denying [the Petitioner's] [m]otion to [a]mend [his] PCRA [petition] submitted on September 2, 2014?
>
> I. Whether the PCRA [c]ourt committed legal error and abused its discretion in finding that all of [the Petitioner's] PCRA claims were deemed waived for failure to develop those claims during the course of the evidentiary hearing?

[The Petitioner's] Brief at 3.

- - -

Primarily, we note the PCRA court determined, "[a]t the evidentiary hearing, [the Petitioner] limited his claim to the victim's wallet[,]" as presented in [the Petitioner's] first issue on appeal. PCRA Court Opinion, 9/12/2014, at 4. Upon review of the record, we agree. "[F]ailure to present any evidence ... during the PCRA hearing [is] fatal to [a] claim." Commonwealth v. Spotz, 896 A .2d 1191, 1219 (Pa. 2006). [The Petitioner] "had the responsibility of bringing all of his evidence to the PCRA hearing." Id. "While the PCRA permits liberal amendment of a petition, it does not extend to forgive a petitioner's failure to present evidence at the PCRA hearing." Id.

In presenting his PCRA claims, [the Petitioner] initially represented himself *pro se*. In his original *pro se* PCRA petition, [the Petitioner] checked a box on the pre-printed PCRA

> petition form indicating he did not want a lawyer to represent him. PCRA Petition, 2/27/2014, at 7. Thereafter, [the Petitioner] amended his petition by adding additional claims, but, again, did not request counsel. At the beginning of the PCRA hearing, the PCRA court conducted a proper colloquy to ensure [the Petitioner] wanted to represent himself. See N.T., 7/29/2014, at 2-3. The PCRA court was satisfied that [the Petitioner] knowingly and voluntarily waived his right to counsel. Subsequently, while [the Petitioner] raised multiple issues in both his initial and amended *pro se* PCRA petitions, he only presented evidence on his first issue, as listed above, at the PCRA hearing. The lack of presentation of evidence was fatal to the remainder of [the Petitioner's] claims. After dismissal of his petition, [the Petitioner] asked this Court to appoint counsel for the purpose of appeal. This subsequent appointment of appellate counsel does not relate back to before the original *pro se* filings and *pro se* representation at the PCRA evidentiary hearing. Thus, we find that [the Petitioner] validly waived his right to counsel before the PCRA court and he subsequently failed to introduce evidence or arguments pertaining to the other issues that are now raised on appeal. Therefore, we will only address [the Petitioner's] first issue as presented, issue A.
>
> In his first issue presented, [the Petitioner] claims trial counsel was ineffective for failing "to present exculpatory evidence that the wrong wallet was introduced at trial." [The Petitioner's Brief at 5]. More specifically, [the Petitioner] claims, "a black tri-fold wallet" presented at trial "was not the same wallet that the decedent had when he was murdered." Id. at 7-8. [The Petitioner] contends, "his sister, Jean Firewick, purchased a specimen wallet similar to the decedent's actual wallet in size, color, and dimensions and gave that specimen wallet" to defense counsel, but counsel "elected not to present this evidence." Id. at 7. He claims that the [Ellen Martin] incorrectly identified the black wallet as the decedent's and that same wallet had [the Petitioner's] DNA on it. Id. at 8. Thus, [the Petitioner] argues he was deprived "of a critical means to call into question the authenticity of the physical evidence in the form of the wallet admitted and further to impeach the credibility of Ellen Martin as to her basic ability to properly identify the decedent's actual wallet." Id.

Id. at *2-3 (some bracketed text added; footnotes omitted).

The Superior Court concluded, *inter alia*, that the Petitioner's claim was without merit. It held:

> We agree with the PCRA court that the specimen wallet would not have been admissible at trial. Upon review of the record, forensic investigators found the wallet, which the Commonwealth admitted into evidence at trial, on a dresser near the decedent. N.T., 2/23/2011, at 107, 118-119. Ellen Martin testified at length about the wallet. She was able to identify it because it had a John Deere tractor on it and she had purchased it. N.T., 2/22/2011, at 219. The decedent kept a fake million-dollar bill in the wallet. Id. at 217-218. At 2:00 a.m. on July 4, 2009, after the last time the decedent was seen alive, [the

11

> Petitioner] went to the home of Ann Biggers and attempted to buy crack cocaine with "phony money." N.T., 2/23/2011, at 147-148. Trooper Mark Russo testified that [the Petitioner] admitted that he attempted to use a fake million-dollar bill that he obtained from the decedent to purchase drugs. Id. at 193. During the course of a single police interview, [the Petitioner] gave Trooper Russo three different versions of how he came into possession of the decedent's fake money. Id. at 194. Forensics revealed [the Petitioner's] DNA was on the wallet that was admitted into evidence. N.T., 2/24/2011, at 21-22. In light of this evidence, [the Petitioner] has not demonstrated how the specimen wallet would have been probative, relevant, or admissible. Moreover, counsel had a reasonable basis to not introduce the specimen wallet based upon the timing of [the Petitioner's] request. Counsel had no time to investigate the claim and Ellen Martin had already testified. Moreover, [the Petitioner] would have known during his first trial that the admitted wallet was not the correct one. His belated attempt to distance himself from the found wallet does not equate to the ineffective assistance of counsel. Here, there is no merit to [the Petitioner's] claim and counsel had a reasonable strategy for not introducing the specimen wallet at trial. Hence, he is not entitled to relief.

Id. at *4.

Thereafter, the Petitioner filed with this Court his petition for a writ of habeas corpus (ECF No. 4), in which he raises the claims he raised during his PCRA proceeding. He filed his petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under § 2254, which is the federal habeas statute applicable to state prisoners, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

The Respondents filed their answer (ECF No. 9) and the relevant state court records. The Petitioner filed his reply (ECF No. 24) and the case is now ready for review.

**B.    Legal Analysis**

The Petitioner is not entitled to relief on any of his claims.[8] As for the claim that the Superior Court denied on the merits in Howard II, its decision withstands the applicable standard of review, which was enacted by AEDPA and which with provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different

---

[8] To the extent that the Petitioner complains of alleged errors made during the PCRA proceeding, those claims are not cognizable because, as the United States Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation*.

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added). See also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

13

result.'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)).

A state court decision is an "unreasonable application of federal law" if the state court "identifies the correct governing legal principle," Williams, 529 U.S. at 413, but "'unreasonably applies that principle to the facts of the prisoner's case.'" Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (quoting Williams, 529 U.S. at 413). The Supreme Court advised:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See [Lockyer v. Andrade, 538 U.S. 63, 75 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Richter, 562 U.S. at 102-03 (parallel citations omitted) (emphasis added).

Importantly, when evaluating a claim under § 2254(d)(2)'s "unreasonable determination of facts" clause, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Pinholster, 563 U.S. at 181-87. Moreover, AEDPA also requires that this Court must presume that the state courts' findings of fact, including the PCRA court's decision to credit Attorney Taylor's PCRA testimony, are correct, and the

14

Petitioner can rebut that presumption only by directing this Court to "clear and convincing evidence[,]" 28 U.S.C. § 2254(e).

The Petitioner has not demonstrated that the Superior Court's decision to deny the claim it adjudicated in Howard II was "contrary to, or an unreasonable application of" Strickland, or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, he has not rebutted the PCRA court's findings of fact by "clear and convincing evidence." 28 U.S.C. § 2254(e). Because he has not overcome AEDPA's standards of review, this claim must be denied.

As for the Petitioner's remaining cognizable claims, they are denied because the Petitioner procedurally defaulted them when he failed to develop them before the PCRA court and, as a result, waived them under state law. The procedural default doctrine is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and, in relevant part, it prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule, and that rule is independent of the federal question and adequate to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

The state-waiver ruled applied here was independent of federal law. It was also adequate. A state rule is "adequate" if: (1) the state procedural rule was sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Shotts v. Wetzel, 724 F.3d 364, 370

(3d Cir. 2013); Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007). See also Beard v. Kindler, 558 U.S. 53 (2009) (discretionary state rules can be "adequate"); Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred). The state waiver rule applied here was adequate because Pennsylvania law has long provided that trial court errors that defense counsel does not raise at trial can only be litigated in a PCRA proceeding via a claim of trial counsel's ineffectiveness, and that such claims are waived if the petitioner fails to develop evidentiary support for them when given the opportunity at a hearing.[9]

Alternatively, if the Petitioner did not default his remaining cognizable claims, they are denied on their merits. As set forth above, Strickland requires that the Petitioner has the burden to demonstrate that Attorney Taylor was ineffective and 28 U.S.C. § 2254 likewise places the burden on him to prove that he is entitled to federal habeas relief. The Petitioner cannot meet his requisite burdens. The record

---

[9] The procedural default doctrine became all the more important after the enactment of AEDPA, which put into place the highly deferential standards of review that a federal court must apply to a state court's adjudication of a petitioner's federal constitutional claims and to its findings of fact. 28 U.S.C. § 2254(d),(e). If the petitioner failed to provide the state court with the opportunity to adjudicate his claim on the merits because, for example, he waived it when he was litigating it in state court, he is not entitled to *de novo* review in a federal habeas proceeding. Rather, the claim is unreviewable in federal court (unless he can overcome his default by showing "cause" and "actual prejudice" or a fundamental miscarriage of justice, concepts discussed in the following paragraph).

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "*external to the defense*" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750 (emphasis in original); see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). The Petitioner has not demonstrated either "cause" or "actual prejudice" in this case. A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schulp, 513 U.S. at 316. The Petitioner has not demonstrated that this is the type of extraordinary case in which he can overcome the default of his claims by way of the miscarriage of justice exception.

does not contain evidence to support his claims, and he cannot add to the record because he is not entitled to either discovery or an evidentiary hearing in this Court.[10]

## C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As codified at 28 U.S.C. § 2253, it provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S.

---

[10] "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). See Harris v. Nelson, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."). Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]"Harris, 394 U.S. at 300; see Bracy, 520 U.S. at 908-09; Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011) ("The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production."); Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) ("bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery"); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same). Importantly, incomplete or inaccurate allegations do not support a finding of good cause for discovery. See, e.g., Tedford v. Beard, No. 09-409, 2010 WL 3885207, at *8 (W.D. Pa. Sept. 28, 2010). The Petitioner has not established good cause to conduct discovery in this case.

In addition, the Petitioner is not entitled to an evidentiary hearing in this federal habeas proceeding. That is because AEDPA prohibits a district court from conducting an evidentiary hearing when the petitioner "has failed to develop the factual basis of a claim in State court proceedings," unless: "(A) the claim relies on-- (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). Those factors are not present here.

17

473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of the Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.

Dated: August 10, 2017

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD HOWARD, | ) | |
|     Petitioner, | ) | Civil Action No. 16-78 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| THERESA DELBALSO, et al., | ) | |
|     Respondents. | ) | |

**ORDER**

AND NOW, this 10th day of August, 2017, IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED as to all claims. The Clerk of Court shall mark this case CLOSED.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc:    Notice by ECF to counsel of record and by U.S. mail the Petitioner at his address of record